## 38878. SINGER v. HABIF, AROGETI & WYNNE, P.C.

BELL, Justice.

This case is on appeal from an order of the DeKalb County Superior Court granting a preliminary injunction enjoining Singer, a certified public accountant, from soliciting any accounting business from any current clients of his former employer, the appellees (Habif, Arogeti & Wynne, P.C., hereinafter referred to as HAW).

On or about September 1, 1978, Singer executed an employment agreement with HAW. Paragraph 10 of this agreement contained a covenant in which Singer agreed 1) that for a period of 24 months from the date of termination of employment 2) that he would not represent, or accept employment or remuneration, of any kind (either directly, indirectly, or in association with other accounting or CPA firms) 3) from, by, for, or in behalf of any clients[1] of HAW 4) within the territorial limitations of the Atlanta metropolitan area[2] or any other county (in or out of the State) in which clients of HAW are located.

Singer effectively resigned from HAW on November 10, 1981 and opened his own accounting practice. By letter dated November 11, 1981, Singer informed his clients and friends that he had terminated his employment with HAW and was opening his own practice. Subsequently, a number of clients who were using HAW switched and engaged Singer as their accountant.

On December 9, 1981, HAW filed suit in DeKalb Superior Court seeking injunctive relief against Singer. On February 3, 1982, the trial court granted HAW's motion for a preliminary injunction. Singer appeals.

The grant of injunctive relief could have been properly based on either the restrictive covenant or on the theory that Singer, as an officer of HAW, breached his fiduciary duty to HAW by appropriating business opportunities (i.e. clients) of HAW. See, Code Ann. § 22-714.

We find that neither of these grounds supports the grant of injunctive relief, and we reverse on this issue.

1) We first address the issue of whether the restrictive covenant could support the grant of injunctive relief. HAW concedes that the covenant would fail under this Court's cases prior to

---

[1] "Client" is defined in the agreement as "any person, firm, or corporation for which any accountant in the firm or Corporation performs work or renders services in any accounting, tax, and or business matter for a period of twenty-four [24] months next preceding the date of termination of this agreement."

[2] Pursuant to the agreement, the Atlanta metropolitan area consists of Fulton, DeKalb, Clayton, Gwinnett, Cobb, Rockdale, Henry, and Walton counties.

*Puritan/Churchill Chemical Co. v. McDaniel,* 248 Ga. 850 (286 SE2d 297) (1982); however, HAW argues that *Puritan/Churchill* introduced a new balancing test into the law of restrictive covenants pursuant to which injunctive relief was proper. We do not find that *Puritan/Churchill* introduced such a new balancing test; therefore, we will analyze this restrictive covenant under the traditional test set forth in *Marcoin v. Waldron,* 244 Ga. 169 (2) (259 SE2d 433) (1979).

Under that test, "Restrictive covenants in employment contracts, being in partial restraint of trade, are enforceable only if strictly limited in time and territorial effect and are otherwise reasonable considering the business interest of the employer sought to be protected and the effect on the employee." *Marcoin,* supra, p. 171. In this case, we find the covenant unreasonable because it overprotects the legitimate interests of HAW and unreasonably affects Singer by prohibiting him from *accepting* or soliciting work from *any* clients of HAW.

We will first examine the legitimate business interests that HAW needs to protect. HAW placed Singer in a position of trust and confidence by allowing him to handle clients. Through this representation, and because of the intimate nature of the professional-client relationship, Singer has most certainly gained a degree of trust, confidence, and rapport with his clients. Because of this relationship between its accountants and its clients, HAW legitimately needs to protect itself from the risk that the accountant may later abuse the trust placed in him and use his intimacy with various clients to appropriate or "pirate" them for his own benefit. See, Blake, Employee Agreements Not to Compete, 73 Harv. L. Rev. 625, 651, 657 (1960).

However, HAW has done more than protect itself against these risks. First, the restrictive covenant provides that Singer cannot *accept* employment from clients of HAW. This provision would prohibit Singer from accepting employment from a client of HAW who comes to him, without any prior solicitation on his part, and requests that he be their accountant. This provision prohibits more than the active solicitation or diversion of clients, and we find that it constitutes an unreasonable restraint of trade as it overprotects HAW's interests and unreasonably impacts on Singer and on the public's ability to choose the professional services it prefers. For a case reaching a similar result see Evans Laboratories v. Melden, 562 SW2d 62 (Ark. 1978).

In addition, this covenant is unreasonable "considering the business interest of the employer sought to be protected" because it prohibits Singer from working for clients of HAW for whom he did not perform services while at HAW. Without the benefit of the trust

and confidence built up through the professional-client relationship, Singer does not have the ability to unduly influence clients for his own benefit; and therefore, he does not hold an unfair competitive edge over HAW in relation to those clients from which HAW would need protection.[3] Consequently this provision unfairly restricts ordinary competition and provides HAW with greater protection than it needs.

2) The next issue concerns whether the servicing of clients of HAW constitutes a "business opportunity." HAW contends that Singer, as an officer of HAW, solicited and accepted employment from clients of HAW in violation of his fiduciary duty not to appropriate "business opportunities" of the corporation. Code Ann. § 22-714.

Assuming that Singer was an officer of HAW, the initial question is whether the servicing of clients of HAW constitutes a "business opportunity." Only if we answer affirmatively must we address the issues of whether Singer violated any of his fiduciary duties in relation to these "opportunities" while he was an officer. In the cases of *Southeast Consultants v. McCrary Eng.,* 246 Ga. 503, 508-509 (273 SE2d 112) (1980) and *United Seal &c. Co. v. Bunting,* 248 Ga. 814 (285 SE2d 721) (1982) this Court established this two-step inquiry for cases involving the appropriation of corporate opportunities.

We find that the servicing of these clients does not constitute a "business opportunity" of HAW. In *McCrary,* supra, and *United Seal,* supra, this Court adopted the "interest or expectancy" test for purposes of identifying corporate business opportunities. "A business opportunity arises from a 'beachhead' consisting of a legal or equitable interest or an 'expectancy' growing out of a preexisting right or relationship." *United Seal,* supra, p. 815. In *United Seal,* supra, we held that the opportunity of dealing with certain customers did not constitute a business opportunity. We found that United Seal had no expectancy in dealing with the customers as there was no contractual relationship between United Seal and its customers and as the customers involved were not exclusively United Seal's.

In this case, HAW argues that *United Seal,* supra, should be controlling as HAW did have engagement letters with its clients and did have an expectancy in the opportunity to service those clients. We disagree. Though HAW had engagement letters with many of its

---

[3] See, 15 Univ. of Rich. L. Rev. 105, 125 (19—), which notes that in cases such as these courts will normally limit the application of restrictive covenants to the customers or clients with which the employee had contact.

clients, those clients were free to leave at any time and seek professional service elsewhere. This type of arrangement merely constitutes an ongoing relationship with no finite aspect. Consequently, we find that the clients of HAW do not constitute a business opportunity. As a result of this holding, we need not reach the issue of whether Singer violated his fiduciary duty. We note in dicta that the relationship between a client and any professional, whether it be a lawyer, doctor, or accountant, is one based on trust and confidence and is of necessity a relationship terminable at the will of the client.

3) Next, Singer appeals from the order of the trial court which directed him "to return all documents in his possession pertaining to clients of HAW for whom Singer does not presently provide accounting services." It is uncontroverted that Singer, before leaving HAW, copied documents relating to work he had done for certain clients; it is unclear whether he copied documents relating to clients he had not serviced. We find that Singer could properly copy records, statements, working papers, and other materials "prepared" by him, but that he could not properly copy for his own use such materials "made" by other accountants of HAW. See, Code Ann. § 84-220(a).

*Judgment affirmed in part; reversed in part. All the Justices concur, except Smith, Gregory, and Weltner, JJ., who concur in the judgment only, and Marshall, P. J., who dissents.*

DECIDED DECEMBER 1, 1982.

*Webb, Daniel & Betts, Paul Webb, Jr., Harold T. Daniel, Jr., Keith M. Wiener,* for appellant.
*Troutman, Sanders, Lockerman & Ashmore, Alan E. Lubel, J. Kirk Quillian, Mitchell S. Rosen,* for appellee.

